IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROBERT LINDWOOD PRINCE,

    Petitioner,

v.                                CIVIL ACTION NO. 2:17cv7

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Robert Linwood Prince's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 13. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 13, be **GRANTED,** and the Petition, ECF No. 1, and Amended Petition, ECF No. 4, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKROUND

On or about September 28, 2012, Petitioner was riding as a passenger in a vehicle that was pulled over for a traffic violation by Petersburg Bureau of Police Officers Shayna B. Perlstein ("Perlstein") and Steven J. Wade ("Wade")[1]. The Court of Appeals of Virginia's Opinion provided the following recitation of the evidence presented at Petitioner's bench trial:

> After police stopped the vehicle in which [Petitioner] was a passenger, they learned [Petitioner] had an outstanding capias. Officers Wade and Perlstein asked [Petitioner] to step out of the vehicle, advised him he was under arrest, and handcuffed him. Upon noticing a large bulge in [Petitioner]'s cheek, Wade asked [Petitioner] what was in his mouth. After twice denying he had anything in his mouth, appellant attempted "to make a swallowing gesture."
>
> Concerned [Petitioner] might choke, Wade "pleaded" with [Petitioner] to spit out the object in his mouth. Wade also grabbed [Petitioner]'s chin and tried to pry open his mouth to prevent [Petitioner] from choking. Instead, Petitioner made another swallowing motion. Coughing and wheezing, [Petitioner] fell to the ground. Wade asked [Petitioner] if he were choking, and [Petitioner] motioned his hand affirmatively.
>
> Wade tried several maneuvers to dislodge the item from [Petitioner]'s throat, but to no avail. With [Petitioner]'s hands cuffed behind his back, Wade had difficulty performing the Heimlich maneuver. When [Petitioner] went limp and appeared to stop breathing, Wade directed Perlstein to remove the handcuffs and performed the Heimlich maneuver again. After Wade's third attempt, [Petitioner] began to cough and breathe. [Petitioner] spat out a "greenish and white baggy" into his hands and threw it under Wade's vehicle.
>
> Wade attempted to place [Petitioner] back in handcuffs, but [Petitioner] resisted. The two officers instructed [Petitioner] several times to stop resisting, but he continued to do so. Wade wrestled [Petitioner] to the ground, but the officers were unable to handcuff him. [Petitioner] did a pushup with Wade lying on top of him.

---

[1] During a suppression hearing, Officer Wade testified that he initially stopped the vehicle because it appeared to have tinted windows that were darker than what is permitted under Virginia law. The traffic stop was further extended by Officer Wade's observation that a small child was unrestrained in the backseat, and the female driver was initially uncooperative and failed to identify herself. *See* April 1, 2013 Suppression Hearing Transcript, 13:6-24 to 19:1-9.

2

> Only after Perlstein deployed her OC spray in Petitioner's face were the officers able to handcuff him.
>
> A search of [Petitioner] produced $170. Perlstein recovered a bag of what appeared to be marijuana from the location where appellant struggled with Wade. Wade retrieved the baggy from beneath his car and discovered it contained a white powdery substance later determined to be cocaine.

ECF No. 15, attach. 1 at 1-2.

On April 3, 2014, following a bench trial, Petitioner was found guilty of obstruction of justice and possession of cocaine with intent to distribute, second offense, and on June 10, 2014, was sentenced to a total of eleven years of incarceration, with eight years suspended. *See* ECF No. 4 at 1; ECF No. 15 at 1, ¶ 1. *See also* Petersburg Circuit Court Record at 179 (sentencing Petitioner to ten years for possession of cocaine with intent to distribute and twelve months for obstruction of justice). Accordingly, Petitioner is detained pursuant to a final judgment of the Circuit Court for the City of Petersburg, Virginia entered on June 10, 2014. ECF No. 15 at 1, ¶ 1.

On or about July 2, 2014, Petitioner appealed his convictions to the Court of Appeals of Virginia on the following four grounds: (1) the trial court erred in denying Petitioner's Motion to Suppress because the police officers took "unreasonably reckless and dangerous actions designed to search him and seize contraband from him, rather than a reasonable attempt to keep him from choking;" (2) the evidence was insufficient to support his conviction for possession of cocaine; (3) the evidence was insufficient to support his conviction for obstruction of justice; and (4) the trial court erred by refusing to order forensic DNA testing of the cocaine recovered at the scene. *See* ECF No. 15 at 1-2 (citing ECF No. 15, attach. 1 ("Respondent's Exhibit A")).

In a *per curiam* opinion dated June 16, 2015, the Court of Appeals of Virginia denied Petitioner's appeal. ECF No. 15, attach. 1. The Court of Appeals of Virginia also denied

3

Petitioner's petition for rehearing on September 22, 2015. On March 28, 2016, the Supreme Court of Virginia refused to entertain Petitioner's further appellate endeavors. ECF No. 15, at 2, ¶ 2. Contrary to Petitioner's contentions in the Amended Petition, it does not appear that Petitioner ever sought state habeas relief. *See* ECF No. 4 at 6 (answering that he raised claims in a habeas petition filed with the City of Petersburg Circuit Court).

Petitioner filed his original § 2254 Petition for federal habeas relief on January 4, 2017, wherein he raised the following three grounds: (1) there was insufficient evidence to support Petitioner's convictions beyond a reasonable doubt, in light of the "wildly incredible story" told by the arresting police officers and the lack of DNA evidence linking Petitioner to the cocaine and marijuana recovered at the scene; (2) the trial court erred when it denied Petitioner's motion for a forensic examination of the evidence recovered at the scene; and (3) the trial court committed reversible error when it failed to grant Petitioner's Motion to Suppress to exclude the cocaine on the grounds that Petitioner's seizure was premised upon racial pretext. ECF No. 1 ("the Petition") at 2-4.

By Order dated February 21 2017, the Court's directed Petitioner to amend his Petition to use the standard *pro se* habeas petition Form AO 241, and to also amend his original Petition to reflect Harold W. Clarke as the proper Respondent. ECF No. 3. On March 24, 2017, Petitioner filed an Amended Petition ("the Amended Petition") using the proper Form and naming the proper Respondent. ECF No. 4. However, it appears to the undersigned that the claims Petitioner raised in the Amended Petition differ from those raised in the original Petition. While the original Petition (ECF No. 1) asserted three distinct claims, the Amended Petition (ECF No. 4) alleges only two broadly-worded claims, which to some extent overlap with the specific, discrete three claims asserted in the original Petition and with the arguments raised on appeal to

4

the Court of Appeals of Virginia. In comparison, the Amended Petition asserts two grounds for federal habeas relief: (1) insufficient evidence to support Petitioner's convictions and (2) failure of the trial court to suppress the drugs and evidence in violation of Petitioner's Fourth Amendment rights. *See* ECF No. 4 at 5-7.[2] The Amended Petition did not indicate whether Petitioner intended to incorporate or abandon the claims previously asserted in the Petition. Thus, the undersigned's recommendation will address the claims asserted in both the Petition (ECF No. 1) and the Amended Petition (ECF No. 4). In the interest of clarity, these claims will be characterized and renumbered as follows:

> (1) insufficient evidence to support both of Petitioner's convictions;
> 
> (2) trial court erred by denying Petitioner's Motion for Forensic Examination of the drugs found at the scene;
> 
> (3) trial court erred by denying Petitioner's Motion to Suppress based on violations of his Fourth Amendment rights because of the unreasonable search of Petitioner which led to his choking;
> 
> (4) trial court erred by denying Petitioner's Motion to Suppress based on violations of his Fourth Amendment rights because of the unreasonable, racially pretextual stop of Petitioner as a passenger in a vehicle.

On September 18, 2017, the Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 13-16. Petitioner filed no Response and the time for doing so has expired. Therefore, the instant Petition (ECF No. 1), the

---

[2] Because the Amended Petition phrases its two claims very generally, without providing specific facts or theories upon which the claims are based, the undersigned liberally construes Petitioner's claims for federal habeas relief on the Fourth Amendment grounds as encompassing both the Fourth Amendment claim asserted on appeal and the Fourth Amendment claim asserted in the original Petition. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (construing *pro se* pleadings liberally). *See also Butts v. Stewart*, No. 2:16CV161, 2016 WL 8262077, at *1 (E.D. Va. Apr. 13, 2016), *dismissed*, 668 F. App'x 521 (4th Cir. 2016) (citing *McNair v. McCune*, 527 F.2d 874 (4th Cir. 1975) (construing *pro se* submission liberally)). It does not appear that the Respondent made such a distinction when responding. *See* ECF No. 15 at 2, ¶ 4 (addressing only the original Petition (ECF No. 1) filed on January 4, 2017 as the "Present Petition"). However, the recommended disposition is unchanged.

Amended Petition (ECF No. 4) and the Motion to Dismiss (ECF No. 13) are ripe for recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted his claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, Petitioner raised all but one of the present claims on direct appeal. Specifically, Claims 1, 2, and 3 were exhausted because they were presented to and considered by the Court of Appeals of Virginia on direct appeal. *See* ECF No. 15, attach. 1. Additionally, the Supreme Court of Virginia was given the opportunity to consider those claims, but declined Petitioner's efforts to obtain review of the Court of Appeals of Virginia's

disposition of Petitioner's appeal. *See Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016) ("In applying § 2254(d) in this case, we 'look through' the Supreme Court of Virginia's summary refusal to hear Grueninger's appeal and evaluate the Circuit Court's reasoned decision on Grueninger's claim.").

Additionally, the undersigned notes that the Respondent expressly concedes that Claims 1 and 2 have been properly exhausted, and tacitly concedes the same regarding Claim 3. *See* ECF No. 15 at 4, ¶ 8. Accordingly, the undersigned **FINDS** that Petitioner has properly exhausted his state remedies with respect to Claims 1, 2, and 3.

Claim 4 – Racial Pretext of Traffic Stop

With respect to Claim 4, the undersigned finds that this specific assignment of error has never been presented in any state court.[3] Rather, on appeal to the Court of Appeals of Virginia, Petitioner raised a related, but different Fourth Amendment-based claim (which the undersigned has renumbered as Claim 3), wherein Petitioner alleged that the police violated Petitioner's Fourth Amendment rights by acting unreasonably to prevent Petitioner from choking. *See* ECF No. 15, attach. 1 at 1 (explaining Petitioner's argument as "contend[ing] that the nature of the search was unreasonable because the officers took 'unreasonably reckless and dangerous actions designed to search him and seizure contraband from him, rather than a reasonable attempt to keep him from choking'").

Here, in renumbered Claim 4, Petitioner appears to argue that the police acted unreasonably and in contravention of Petitioner's Fourth Amendment rights by requesting Petitioner's identification when Petitioner was merely a passenger due to racial motivations and

---

[3] In a written motion to suppress before the trial court, Petitioner argued for application of the exclusionary rule on the grounds that Petitioner was subjected to an illegal stop and seizure because the officers' directive for Petitioner to provide his identification "was not supported by reasonable suspicion or probable cause" and any response or information obtained by the officers "was not voluntary or the product of consent under the circumstances." Petersburg Circuit Court Record at 44.

7

for no legitimate reasons. According to Petitioner, the trial court erred when it failed to grant Petitioner's Motion to Suppress on this basis. *See* ECF No. 15 at 4, ¶ 8 (observing that renumbered Claim 4 "is premised upon a different basis than that presented in state court. While [Petitioner] maintains in each instance that the trial court erred in denying his motion to suppress, he now claims for the first time that the police officers' request for his identification was 'an unconstitutional intrusion based upon racial profiling'"). Because Claim 4 as alleged in the Petition has never been presented in state court, either at the trial level or higher, Petitioner has defaulted on this claim, and it is procedurally barred from the Court's consideration pursuant to the instant Petition and Amended Petition. As clearly established by Fourth Circuit case law, "[i]n Virginia, the basic procedural bar rule is a simple one: no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not." *Pruett v. Thompson*, 771 F. Supp. 1428, 1437 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993) (citing *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975); Va. Code Ann. § 8.01–654(B)(2)). Notwithstanding Petitioner's failure to raise Claim 4 at any time in any state trial or appellate court, both the Petition and the Amended Petition fail to allege cause sufficient to overcome his procedural default of Claim 4. *See Royal v. Netherland*, 4 F. Supp. 2d 540, 551 (E.D. Va. 1998), *aff'd sub nom. Royal v. Taylor*, 188 F.3d 239 (4th Cir. 1999) ("The Supreme Court of the United States has recognized at least three categories of 'cause' which are sufficient to overcome a state procedural default: (1) counsel's inability to know of a legal or factual issue; (2) interference by the prosecution with the habeas petition; and (3) ineffective assistance of counsel.") (citing *Murray v. Carrier*, 477 U.S. 478 (1986)).

Accordingly, the undersigned **RECOMMENDS** that Claim 4 be **DENIED AND DISMISSED**.

**B. Standard of Review**

<u>28 U.S.C. § 2254(d)</u>

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if Petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

In *Williams v. Taylor*, the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

"The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly

9

established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.").

### C. Facts and Findings of Law

As an initial matter, the undersigned notes that Petitioner failed to respond to the Respondent's Motion to Dismiss and therefore waives the right to contest the arguments made therein. *See Westry v. N. Carolina AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004) (finding that plaintiff waived a claim by failing to address defendant's refutation of it). Notwithstanding the blanket concession of the Respondent's arguments, the undersigned **FINDS** that Petitioner's claims lack merit, and dismissal of the claims asserted in both the Petition and the Amended Petition is warranted.

Claim 1 – Sufficiency of the Evidence

In Claim 1, Petitioner alleges that there was insufficient evidence to support Petitioner's convictions for obstruction of justice and possession of cocaine.[4] Here, the state court was not unreasonable in finding that Claim 1 "has no merit." *See* ECF No. 15, attach. 1.

Regarding the obstruction of justice charge, Petitioner was convicted under Va. Code Ann. § 18.2-460(A), which provides

> A. If any person without just cause knowingly obstructs a judge, magistrate, justice, juror, attorney for the Commonwealth, witness, any law-enforcement officer, or animal control officer employed pursuant to § 3.2-6555 in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such judge, magistrate, justice, juror, attorney for the Commonwealth, witness, law-enforcement officer, or animal control officer employed pursuant to § 3.2-6555, he shall be guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2-460(A). On appeal Petitioner contended that the Commonwealth failed to prove beyond a reasonable doubt that Petitioner intentionally interfered with the officers' actions and resisted arrest, and averred that Petitioner's resistance or failure was due to Petitioner choking while handcuffed and simultaneously being punched in the abdomen by Officer Wade. ECF No. 1 at 2-3. Notably, neither the Petition nor the Amended Petition flesh out this argument any further than the general and conclusory claims that "[t]he prosecutor is responsible to prove [sic] every element of the crime in which the petition is charge but he failed to do so." ECF No. 4 at 5. *See also* ECF No. 1 at 3 ("Trail [sic] testimony states that your Petitioner spit a bag containing more than 15 grams of cocaine under a police car, while handcuffed behind his back

---

[4] While Petitioner did claim that there was insufficient evidence to support his obstruction of justice conviction on direct appeal to the Court of Appeals of Virginia, it appears that the Petition focuses on the lack of evidence to support only the possession of cocaine charge. ECF No. 1 at 2-3. The Amended Petition provides no further clarity, alleging generally that there was "insufficient evidence" without specifying the elements or otherwise identifying which crime was not supported by evidence. ECF No. 4 at 5. Affording Petitioner the liberal construction due to *pro se* habeas petitioners, the undersigned will construe this claim to complain of insufficient evidence as to both obstruction of justice and possession of cocaine.

11

choking. While at the same time being punched in the abdomen with [O]fficer Wade's fist. This wildly incredible story is the foundation of the Commonwealth's case."). The Court of Appeals of Virginia rejected this claim, finding that, after viewing the evidence in a light most favorable to the prosecution, "the evidence proved [Petitioner] resisted the officers' efforts to place him in handcuffs after the choking incident had concluded. He ignored their commands and had to be wrestled to the ground." ECF No. 15, attach. 1 at 4.

With respect to the possession of cocaine charge, Petitioner was convicted of a second or subsequent offense under Va. Code Ann. § 18.2-248(C), which makes it illegal to possess with intent to manufacture, sell, give or distribute a controlled substance (cocaine). Petitioner makes much of apparent inconsistencies between the testimony of Officer Wade and Officer Perlstein regarding the baggy of cocaine. Petitioner notes that the officers' testimony was inconsistent about whether Petitioner spit the bag of cocaine out of his mouth and under Officer Wade's police vehicle or if Petitioner spit the baggy into his hand and then threw it under Officer Wade's vehicle. Additionally, Petitioner observed that Officer Wade testified that he saw an object bulging from Petitioner's cheek, but Officer Perlstein never testified to observing a bulge. *See* ECF No. 15, attach. 1 at 3. According to Petitioner, these testimonial inconsistencies rendered the testimony of both Officer Wade and Officer Perlstein unbelievable and a failure to prove each and every element of the crime beyond a reasonable doubt. The Court of Appeals of Virginia rejected Petitioner's argument, finding that "the consistencies were not so material that 'any rational trier of fact could [not] have found the essential elements of the crime beyond a reasonable doubt.'" ECF No. 15, attach. 1 at 3-4 (quoting *Stevens v. Commonwealth*, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250,

12

257, 584 S.E.2d 444, 447 (2003), *aff'd*, 272 Va. 481, 634 S.E.2d 305 (2006))) (alteration in original).

It is well-established that "[t]he relevant question in this inquiry 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). *See also Sandoval v. Commonwealth*, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."); *Swanson v. Commonwealth*, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) ("So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. ***If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.***") (citing *Simpson v. Commonwealth*, 199 Va. 549, 557–58, 100 S.E.2d 701, 707 (1957)) (emphasis added). *See e.g., Swinson v. Dir., Dep't of Corr.*, No. 3:14CV100, 2015 WL 1185951, at *6 (E.D. Va. Mar. 13, 2015) (citing *Peterson v. Commonwealth*, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury)).

Here, without substituting the undersigned's judgment for that of the factfinder (the trial court), it cannot be said that no reasonable trier of fact would have failed to arrive at the same conclusion as did the trial court who conducted the bench trial. To the extent there were

inconsistencies between the testimony of Officer Wade and Officer Perlstein, they were not so material as to affect the ultimate conclusion: that at some point, Petitioner had a green, clear baggy filled with an off-white substance in his mouth, which one of the officers noticed because of the appreciable bulge, Petitioner attempted to swallow the same, but began to choke, and then once that baggy was expelled, through a combination of the officers' Heimlich efforts or Petitioner's own ability to spit it out, it ended up underneath a police vehicle, where it was recovered. Subsequent chemical testing by the state laboratory determined the contents of the baggy to be "15.493 grams of powder, found to contain cocaine." Petersburg Circuit Court Record at 53 (November 8, 2012 Certificate of Analysis). Additionally, Petitioner points to no evidence to contradict the officers' testimony regarding his efforts to avoid placement back into handcuffs once the choking episode concluded, such that the deployment of pepper spray was required to subdue Petitioner. Notably, Petitioner elected not to testify, as was his constitutional right. *See* ECF No. 15, attach. 1 at 5 n.2 ("[Petitioner] did not allege he intended to testify at trial, and in fact, did not testify.").

Accordingly, Petitioner failed to demonstrate that there was insufficient evidence to support his convictions for obstruction of justice and possession of cocaine with intent to distribute, second offense, therefore, the undersigned **FINDS** that the state court's decision was not unreasonable or contrary to law. Therefore, the undersigned **RECOMMENDS** that Claim 1 be **DENIED AND DISMISSED**.

Claim 2 – Denial of Motion for Forensic Testing of Contraband

In Claim 2, the Petition alleges that the trial court erred by denying Petitioner's motion for forensic examination of the drugs found at the scene. ECF No. 1 at 3. This specific claim was not reiterated in the Amended Petition, but the argument was presented to the Court of

Appeals of Virginia. *Compare* ECF No. 4, *passim*, *with* ECF No. 15, attach. 1 at 4-5. Prior to the first scheduled trial date, on May 24, 2013, Petitioner filed a written motion for forensic testing of the drug evidence pursuant to Va. Code Ann. § 9.1-1104, which provides that

> Upon the request of any person accused of a crime or upon the request of an accused person's attorney, the Department or the Division of Consolidated Laboratory Services shall furnish to the accused or his attorney the results of any investigation that has been conducted by it and that is related in any way to a crime for which the person is accused. In any case in which an attorney of record for a person accused of violation of any criminal law of the Commonwealth, or the accused, may desire a scientific investigation, he shall, by motion filed before the court in which the charge is pending, certify that in good faith he believes that a scientific investigation may be relevant to the criminal charge. The motion shall be heard ex parte as soon as practicable, and the court shall, after a hearing upon the motion and being satisfied as to the correctness of the certification, order that the same be performed by the Department or the Division of Consolidated Laboratory Services and shall prescribe in its order the method of custody, transfer, and return of evidence submitted for scientific investigation. Upon the request of the attorney for the Commonwealth of the jurisdiction in which the charge is pending, he shall be furnished the results of the scientific investigation.

Va. Code Ann. § 9.1-1104. *See* Petersburg Circuit Court Record at 101-03 ("Defense Motion for Forensic Testing"). After a hearing on the subject, the trial court denied Petitioner's motion, concluding that the Commonwealth was not relying on DNA evidence (which Petitioner conceded), and Petitioner had not otherwise demonstrated that DNA evidence/testing was relevant, beyond the potential for providing exculpatory evidence. *See* ECF No. 15, attach. 1 at 5. *See also* May 29, 2013 Hearing Transcript.

According to Petitioner, it was a "clear abuse of authority to deny this forensic examination and a direct obstacle to the fact finding process." ECF No. 1 at 3. Petitioner concludes his presentation of this claim with the assertion that he has "met his burden showing diligence in his effort to develop facts to support this claim." ECF No. 1 at 3. The Court of Appeals of Virginia rejected this claim, and found no error in the trial court's ruling, holding that

15

although Petitioner denied that the cocaine baggy was in his mouth, "he did not 'certify' that DNA testing could be relevant to his criminal charges, and filed no affidavit in support of the motion. The lack of certification, in combination with the lack of DNA evidence in the Commonwealth's case, [sic] justified the trial court's denial of [Petitioner's] motion." ECF No. 15, attach.1 at 5.

The state court's conclusion was not unreasonable. Petitioner was obligated to adhere to the requirements of the Virginia Code, and failed to do so, and in light of the Commonwealth's position not to rely on DNA evidence, it cannot be said the state court acted unreasonably in determining that the trial court did not err by concluding that Petitioner failed to prove that DNA testing was relevant. Consequently, the undersigned **FINDS** that Petitioner failed to establish that the Court of Appeals of Virginia acted unreasonably or contrary to well-established Supreme Court law in rejecting this claim. Therefore, the undersigned **RECOMMENDS** that Claim 2 be **DENIED AND DISMISSED.**

Claim 3 – Unreasonable Stop and Seizure

In Claim 3, Petitioner argues that the trial court erred by denying Petitioner's motion to suppress based on violations of his Fourth Amendment rights because of the unreasonable search of Petitioner which led to his choking.[5] Petitioner asserted this argument in a written motion to suppress before the trial court. On April 1, 2013, the trial court held a suppression hearing to consider Petitioner's motion, at which Officers Wade and Perlstein both testified and the trial court entertained oral argument from both defense counsel and the Commonwealth. The crux of

---

[5] As the undersigned previously noted, the Petition does not assert this specific claim, and the Amended Petition makes only a general claim of a violation of trial court error in denying Petitioner's motion to suppress. *See* ECF No. 4 at 7 (describing claim as "failure of the court to suppress the drugs and evidence" and "it is reversible error because the court failed to suppress the evidence at trial which is a violation of his 4th Amendment right to the U.S. Constitution"). However, in the interest of affording *pro se* Petitioner the liberal construction customarily afforded to *pro se* litigants, as well as the Amended Petition's reference to the Court of Appeals of Virginia's consideration of this claim, the undersigned will evaluate this claim as well. *See* ECF No. 4 at 7 (answering affirmatively when asked if this ground was raised on direct appeal).

Petitioner's argument relied heavily on *United States v. Edwards*, wherein the defendant argued that he was subjected to an unreasonable strip search when "[t]he police search included an officer's use of a knife to cut a sandwich baggie containing suspected narcotics off Edwards' penis, an act performed at night on a public street." *United States v. Edwards*, 666 F.3d 877, 879 (4th Cir. 2011). In reversing the trial court's denial of Edwards' motion to suppress, the Fourth Circuit provided the framework to be used when determining the reasonableness of a search: "'we examine the search in its complete context and consider the following factors: 1) the place in which the search was conducted; 2) the scope of the particular intrusion; 3) the manner in which the search was conducted; and 4) the justification for initiating the search.'" *United States v. Madriz*, 532 F. App'x 353, 355 (4th Cir. 2013) (quoting *Edwards*, 666 F.3d at 883). Ultimately, the trial court denied Petitioner's motion to suppress, finding that Petitioner was never in custody when asked for his identification, and he was lawfully arrested pursuant to an outstanding capias. Additionally, the trial court found that *Edwards* considered a sexually invasive search, and was therefore "entirely distinguishable" from the officers' reasonable physical interactions with and search of Petitioner, which occurred only because of Petitioner's attempts to conceal contraband and "he ends up almost choking to death." April 1, 2013 Suppression Hearing Transcript, 70:7-24 to 71:1-8. Upon direct review of this claim, the Court of Appeals of Virginia held that the trial court did not err in denying Petitioner's motion to suppress because unlike in *Edwards*, "the trial court could conclude that [Petitioner's] actions, as opposed to the nature of the search, were responsible for placing him at risk of choking." ECF No. 15, attach. 1 at 3 (citing *Edwards*, 666 F.3d at 885-86). The Court of Appeals also found notable Petitioner's failure to contest that the officers were entitled to search him incident to a lawful arrest. ECF No. 15, attach. 1 at 2.

17

In light of this factual background, and Petitioner's failure to present argument to the contrary, the undersigned **FINDS** that the state court did not act unreasonably when rejecting this claim on appeal. The state court's decision crediting the officers' testimony was neither contrary to nor an unreasonable application of clearly established federal law, and Petitioner pointed to no authority suggesting otherwise. Therefore, the undersigned **RECOMMENDS** that Claim 3 be **DENIED AND DISMISSED.**

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 13, be **GRANTED**, and the Petition, ECF No. 1, and Amended Petition, ECF No. 4, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.

140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 21, 2018